Next case is Jumpsport v. Jumpking, et al., 05-1182. I am joined by the President of Jumpsport, Mr. Mark Publicover. And you're reserving seven minutes. I'm reserving seven minutes, Your Honor. Your Honor, this is a case of people who love children. In 1996, there were three million large-sized— I thought this was a legal case. Well, it's a legal case, but it's about a patent that came out of Mr. Publicover and his colleagues' desire to protect children from the really extraordinary number of injuries that were happening on the millions of trampolines— You're not suggesting if you lose, the children of America are at great risk, are you? I'm suggesting, Your Honor, that if we lose, the incentive to innovate and create safety equipment is reduced. Mr. Esbesta, we're not a policymaking body. We're not a jury. Why don't you spend your limited time telling us where the lower court heard? Well, I think the first mistake I'd like to address is the judge's denial on JMOL of Jumpsport's request that the Fund Ring 2 product be found to infringe. This is a product that is, in all essential respects, identical to Fund Ring 1, which the jury did find infringed. The difference, though, that resulted in the non-infringement finding is that the poles in the Fund Ring 2 take the form of an arch, beginning at one leg of the trampoline, arching over and joining to an adjacent leg. In that respect, the poles of the Fund Ring 2 are no different from the U-shaped poles of the Bailey Pryor Arch, which the examiner found to be independent poles within the meaning of the claims, and which, rather than disputing, Jumpsport amended by adding additional limitations in order to obtain allowance of those claims over the Bailey Pryor Arch. Are you arguing validity or infringement? I'm sorry. I'm arguing claim construction. I suspect, Your Honor, that the best way to describe this is the claim construction the court reached that would encompass a U-shaped arch is correct because of the way in which Jumpsport addressed the Bailey Pryor Arch during the prosecution of the patent. Well, how does that relate to the jury's consideration of the evidence? And wasn't the jury free to make a determination of infringement on the record presented based upon the court's claim construction? Well, the standard view, of course, is was there substantial evidence supporting the jury's verdict, and our argument would be, our position is that there was not, because the Fund Ring 2 poles are identical to the Bailey poles, which the prosecutor, the examiner had specifically found to be encompassed within the claims, and there's no other distinction. How is that relevant to the issue presented to the jury? The jury had, there was a claim construction made by the court, the jury was instructed on that claim construction, there was a record of evidence presented, and the jury considered that record. Now, what relevance to that is the determination made in the patent office by the examiner? I mean, it seems to me that would certainly go to the claim construction. The claim construction was broad enough to encompass the Bailey poles, and therefore was broad enough to encompass the Fund Ring 2 poles. By not finding that the Fund Ring 2 poles fell within that claim construction, the jury erred. So you're saying the claim construction was wrong, the district court's claim construction was wrong. No, no, your honor, I'm sorry if I've confused that issue. You lost me. The district court's claim construction was exactly right, because it interpreted the claims, the phrase independent poles within the claims, sufficiently broadly to encompass the poles of the Bailey prior article, which the claims were specifically meant to address. That's a validity question. That's a claim construction issue, your honor. The result of the jury's determination is that a product that is, in all relevant respects, identical to the prior art over which the claims were amended and ultimately allowed. So in other words, this one feature of the claim, the independent poles, that was admitted in the prior article, and was admittedly part of the claim, is the only thing that's different about the Fund Ring 2 from the claim. So you're saying that because the examiner thought there was a difference, then the jury should similarly find there's a difference. The examiner said an independent pole includes a pole that is in the shape of an arch, connecting both ends to the trampoline itself. We admitted that, accepted that, during the prosecution. When the Fund Ring 2 is assessed for infringement purposes, the only plausible non-infringement argument that Jump King has advanced is that its pole is an arch, and therefore it's not an independent pole. Well, they argued it's not independent, and the jury was free to make that conclusion. Were they not? The jury was free to make that conclusion. The jury is certainly not bound by whatever the examiner might have been thinking about during prosecution. Well, I beg to differ, Your Honor, in that the result of the jury's conclusion is that a product that was specifically contemplated as being within the scope of the claims has been found not to infringe. The public had noticed that this was how broad the claims were, the trial court correctly interpreted the claims to be so broad, and the jury did not find the Fund Ring 2 to infringe. That's the mistake the jury made. There is no substantial evidence to support the jury's finding of non-infringement, since the only non-infringement evidence advanced is that the pole of the Fund Ring 2 is not an independent pole because it can be broken up into two vertical portions and an arch over the top. That is not a distinction in view of the claim construction and the file history from the independent pole requirement of the claims, and therefore the Fund Ring 2 should have been found to infringe. Mr. Esbester, you're saving seven minutes for rebuttal, so you're going to run out of your opening in just a minute. Let me ask you a question. You started out with a rather global approach to this problem, and your brief is rather global. You have 11 issues that you want us to deal with. My mind is a little limited. If you had to pick one thing that you think the trial court did wrong, one error that the trial court committed that warrants are reversing the judgment and the jury verdict, what would that one thing be? The one thing would be the issue we just discussed, Your Honor. The Fund Ring 2 poles are independent poles within the scope of Claim 1 of the 845 patent, and therefore the Fund Ring 2 infringes the court's determination to deny JMOL on that point. Was it incorrect? There is no substantial weight. There is no evidence to support the jury's finding of non-infringement. Thank you. I would, however, also suggest that— You want to save the other 10 issues, I assume. Your Honor, I think these issues have been sufficiently dealt with on the briefs. I would like to address, however, the question of whether ICON, Jump King's parent corporation, should be liable as an inducer of infringement. And, of course, the evidence there is that ICON operated a website on which the accused products were being sold, including the product that was found to infringe the Fund Ring 1. ICON itself commissioned opinions of willfulness relating to the willfulness issue. ICON even sued Jump Sport on the unfair competition, claiming that Jump Sport's advertising was interfering with ICON's sales of the accused products. So the parent company, ICON, is inducing the sales and should be found liable as an infringer, along with the subsidiary, Jump King. I also—well, I'm going to reserve the remainder of my time, Your Honor, to respond to Mr. Blakott. That'll be fine. Now, appellees and cross-appellants have two lawyers, and you want to split up the time three ways. That's fine, but I need to hold you to it. And let me point out that if you end up with time for cross-appeal, your argument on that will only be limited to the cross-appeal, not responding a second time on the main appeal. Please proceed, Mr. Blakott. I understand, Your Honor. May it please the Court, I am Larry Blakott of the Workman Nidegger Firm, and I'm appearing on behalf of Jump King and related retail defendants. In this action, we believe and the facts establish in the context of governing authority that the judgment of non-infringement by the Fund Ring 2 should be affirmed because substantial evidence supports that jury verdict decision. We also submit that the reversal of damages findings as it relates to the Fund Ring 1 are appropriate because those claims are either not infringed or are obvious or anticipated and therefore invalid. We also ask for reversal as to the inequitable conduct finding, which I will address in more detail in just a moment. And finally, we ask this Court to affirm the judgment regarding false advertising. I turn first to the argument on the Fund Ring 2. Substantial evidence supports the verdict under the district court construction. The district court construction, as this Court is aware, included a phrase that said, wherein each pole is not connected to another pole above the surface of the map in a substantively inflexible manner. The district court's construction isn't challenged, isn't that right? It is challenged. However, we can accept the result of non-infringement under the finding of the jury verdict with the district court. Didn't Mr. Esbesta conceded the claim construction was correct? He did. Then why are you spending time defending it? Two alternative ways to find non-infringement, Your Honor. First, substantial evidence under the district court's interpretation of the claim terms. As they are, the substantial evidence exists in the testimony of the expert witness of Jump King, Mr. Bigelow. He testified that he had two independent poles and that they were connected by an inflexible member. That was likewise supported in the record by the testimony of Mr. Juergensen, who testified this metal pole indeed was rigid, that it was inflexible. Even surprisingly, Dr. Walensky, the expert of jump sport, conceded that the cross member was a rigid member, therefore inflexible, under the very construction adopted by the court and which construction was proposed by jump sport. Under those circumstances, Your Honors, there is substantial evidence to support the jury verdict's conclusion. There is an alternative theory under which this court could proceed. As you recall, in the record at 10382, there is a specific disavowal of a specific meaning and understanding of the term pole. Jump sport told the examiner they understand the term pole. A common sense understanding of the term pole does not include an inverted U-shaped member or a panel member. Under those circumstances, the construction of the court that would in any way include or allow for infringement of a product such as the fund ring 2 would be inappropriate. The court may find non-infringement on either basis. But there is additional substantial support in the record in the context of claim 14, which is one of the independent claims asserted. The claim requires a first and a second removable fastener. The fund ring 2 only has one fastener. Even Dr. Velinsky, their own expert, admitted it had only one fastener. Mr. Bigelow confirmed this. And a perusal of the record at A8670 shows that the fund ring 2 has only one fastener. So claim 14 and all dependent claims from it cannot be infringed. Claim 1, again substantial evidence there, you had a requirement that the netting be coupled to the rebounding mat. However, Mr. Bigelow testified that under the court's construction, that does not occur because of the D ring. There is an intermediate member to which the netting was attached. Under those circumstances, the substantial evidence of record shows, as is shown at A8672 where the manual calls out the D ring or the V ring in this instance, there cannot be infringement under the fund ring 2. Now turning briefly to the ICON issue, ICON cannot be liable on any theory of direct infringement. That is barred because there was no Rule 50A motion. As to the indirect infringement concept of inducement, there are four independent reasons why the jury verdict should stand. First, there is absolutely no evidence of record that ICON's conduct induced anyone to infringe. None. A complete void in the record. Secondly, there is no reason to send this case back because as this court will find at A6496, Jump Sport's expert on damages, Mr. Hanson, testified that there is no damage assessment for ICON. Astonishing. And yet, they would ask the court to send this back for no reason. More importantly, there is no evidence of any intent to cause the acts of infringement. The duties performed by ICON were on a contract basis for technical support. They performed these without any intent, and there is absolutely no evidence of intent to cause the acts of infringement shown in this record. Under those circumstances, the final point, number four, is that even with that, ICON went out and under the Manville decision, obtained an opinion of non-infringement, and therefore did not have knowledge, nor should it have known, of infringement. Now, the only complaint that's been raised as to that point by Jump Sport is that there wasn't a jury instruction on this issue. However, if the court turns to page A7017 through 7018 of the appendix, you will find that the jury was indeed instructed, and they were instructed as to knowledge or should have known, knew or should have known, that the actions could cause direct infringement. Under all these circumstances, Your Honors, we submit that the evidence and the governing authorities demonstrate clearly that the decision as to ICON and no liability, no damages, should be upheld. I now wish to turn to the cross appeal as it relates to the Fund Ring 1 arguments briefly. In this regard, Your Honors, there is no infringement, or alternatively, there is invalidity of the asserted claims. We submit that with respect to obviousness, the end caps that relate to certain claims, I will not detail them, you have them in the briefing, end caps were known. They were even required by the governing ASTM standards. This was not something novel. This is something on which this court can make a determination independently of obviousness. The same is true with sheets. Your Honors, I wish to bring to the court's attention, and this is an egregious matter for the reason that we're told that there is no sheath in the prior art by Joe Sport, on the one hand. Mr. Laker, you can continue, but I tell you you're working into Mr. Delaney's time and your rebuttal time. I'll take one minute. I appreciate that, Your Honor. With respect to obviousness on the sheets, it's interesting to find that they say there's no sheath when they're looking at the idea of trying to find non-obviousness for the patented invention. But when they're trying to defend the case of inequitable conduct, suddenly there's all kinds of cumulative art that has sheaths. This court can find obviousness. ASTM teaches obviousness, and unrebutted testimony of the expert shows it. The same is true with respect to the coupling of the netting to the mat. The same is true with respect to the finding, even teaching, of the patent that the leg stub is part of the leg. And finally, the netting is not coupled to each pole through a resilient sheath. On all of those Fund Ring I-related issues, a finding in favor of Jump King is appropriate and may be appropriate in fact. A quick factual question. Maybe you'll get an extra 30 seconds. Did the Jump King product include a trampoline, or was it just the enclosure? There were products that were sold separately. There was an enclosure, and there was a trampoline. Some kits. In the evidence, there was some evidence, but it's not clear on how many or what or by whom. I was having trouble finding that answer in the record. And that's because the record is devoid of evidence on that subject, Your Honor. Thank you. Finally, I wish to simply submit that inequitable conduct, a finding by this Court, is appropriate for the reason that the patentee in this case knew of the prior art, knew of its materiality, and testified of its materiality. And finally, in this particular case, it is even more egregious under the circumstances of which this Court found on five separate occasions that this particular witness had no credibility and had lied. We're going to jump to Mr. Delaney. Thank you, Your Honor. And you'll have five minutes. Thank you, Your Honor. Tim Delaney for Alticore, formerly known as Amway. I just want to argue a single point for affirmance for the judgment of non-infringement, and that is Jumpsport's absolute failure of proof. They had the burden of preponderance of evidence to prove infringement, and they simply didn't do it. The district court, in referencing the proof on the retailer defendants, Alticore is one of them, stated, If anything, this understated the lack of proof. Jumpsport simply ignored my client, Alticore, at trial. Its inattention is manifested by the fact that it never even asked the jury whether my client infringed one of the patents in suit, the 207 patent. There was no statement of that on the verdict, asking the jury whether or not Alticore infringed that. In its brief, Jumpsport identifies a single piece of evidence to support its position that the jury failed to find infringement. And it was a spreadsheet. It's A10518, which is entitled Trampoline Sales. No witness ever explained that spreadsheet. The spreadsheet doesn't even have Alticore's name on it. Left with that vacuum of evidence, the jury had no choice but to find for Alticore and find that there was no infringement. Now, there are several other bases for affirming the case, but I'll rely on the briefs and Co-Appellate Counsel. Thank you. Thank you, Mr. Delaney. Mr. Isbester has four minutes. Was it four minutes or seven? That says 6.46. Your Honors, I would like to begin with the question of obviousness. First of all, that only comes up because in working through the verdict, the jury checked off some of the dependent claims as being claims that they had found. Mr. Isbester, I think you're limited to response. Was that raised by appellee? Well, the question of obviousness was. I think Mr. Lakoff requested a finding that claims involving in-caps, sheaths, or in coupling to the rebound amount were all obvious. And, Your Honors, if that's true. I didn't hear much about the jury form, though. No, I agree. If that is true, if those were all obvious, why was it with so many trampolines out there and so many kids being injured, nobody had been able to make or sell an enclosure? And the reason is that it's actually, despite what's in the prior art, extremely hard to do. You have to make it safe, of course, and durable. You have to make it small enough that it can be sold. You have to make it inexpensive enough and easy enough to assemble. And so it wasn't until Jump Sport devoted the time and effort, a year of testing, materials analysis, the engineering calculations, and so forth, required to figure out why it was so difficult and how to solve those problems that you were actually able to see a commercially viable product. And one of the solutions was to realize, for example, that everybody had been thinking about trampoline enclosures with poles that went as high as a person could possibly jump on a trampoline, making it commercially non-viable. But if you look at the speed at which a body might be falling at the top of its jump, it could actually just use an end cap and a much lower pole. So this was not an obvious innovation. This was, in fact, an important step forward over the prior art. Similarly, there is, well actually there is nothing in the prior art that suggests that coupling the rebounding mat itself to the net so that the rebounding mat could absorb some of the side impact of a person being projected off the trampoline was actually an important step in making a safe enclosure. These are the sorts of things that, after a year of testing and experimentation, JumpSport was able to figure out. And those claims, therefore, are, in fact, not obvious. And the success of the product, no trampoline enclosures being sold in 1996, hundreds of thousands being sold within two years, immediately after the introduction by JumpSport of its invention. Let me respond to the question of inducement by Alticorp, then Amway. Your Honours, there is no question that Alticorp sold trampoline enclosures. Some of those trampoline enclosures, the jury found, infringed. What could Alticorp possibly have expected its customers to do with a trampoline enclosure other than assemble it to enclose a trampoline and thereby create the infringing combination? So I think that, by itself, is sufficient evidence to find Amway and Walmart and its subsidiaries to be liable as inducers. While we're on the topic of inducement, I think the reliance by ICON on the MANDA line of cases is inappropriate. In that case, two employees of the infringer, who did not know the patent existed until the lawsuit was filed, were ultimately found at the trial court to have induced infringement because they continued activity that assisted their employer in selling the infringing product. Well, that's not the ICON situation at all. ICON provided testing for the JumpKing product while it was in development, provided a website on which JumpKing could sell the product. It sold the product itself, and indeed, well before the lawsuit was filed, it identified the JumpSupport patent, the 845 patent, as an issue and went out and obtained opinions of counsel itself. Now, if in fact the case is that every time you get an opinion of counsel, you have thereby inerted yourself, insulated yourself from liability as an inducer of infringement, how then does inducing infringement differ from willful infringement? And the position that ICON advances here collapses those two standards. And finally, I'd like to return to the point that Judge Plater and I were talking about earlier. The lead argument here is the JumpKing Fund Ring 2 and whether those poles are indeed independent poles. Mr. Laycock referred to a crossmember. In fact, it's not a separate crossmember in any respect other than the fact that it happens to be going over the top of the arch. It's the same material. It's the same dimension. It's the crossmember only in the sense that a tent pole that goes from one end of a tent over the top of a tent down to the other has a portion at the top that he would also presumably refer to as a crossmember. I'm curious about your argument about ICON. What would an infringement judgment against ICON add to your damages recovery? Your Honor, in terms of a monetary amount, nothing that we're aware of. In terms of a judgment's collectibility, there might be important differences. And that's why that's an important issue for us. Mr. Laycock suggested that there was an express disavowal of poles that were arched or shaped. And Mr. Laycock is incorrect there. The claim to which the Bailey reference was cited, the claim 65 of the 207 patent during prosecution, specifically required vertically extending poles, poles that would bow in the way of a drawn archery bow in order to absorb energy. Mr. Izbesta, your red light is on. Do you want to finish your sentence? I'm sorry, Your Honor. I had another minute. What we were doing in that case was distinguishing between a vertically extending pole and a pole that was, in fact, arched, not poles in general. And therefore, there was no express disavowal. Thank you, Your Honor. Thank you, Mr. Laycock. Your colleague, Mr. Delaney, was courteous enough to save you some time. But your time is only for the cross appeal and to reply. And I didn't hear anything from Mr. Izbesta on the cross appeal. So I think you have no standing to reply. If I may simply conclude, I ask that leave of court. Conclude? Just a summary statement, Your Honor. You have nothing to respond to in the cross appeal. And you have no right to speak a second time as appellee on the main appeal. Thank you, Your Honor. Case will be taken under advisement. It was nice to have you here. Always a pleasure. Do you actually get anything useful from this thing?